USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 12/15/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL LAZARO-GARCIA,

                Plaintiff,

v.

SENGUPTA FOOD SERVICES, *et al.*

                Defendants.

No. 15-CV-4259 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Michael Lazaro-Garcia brought this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the New York Labor Law ("NYLL"). On September 22, 2015, the parties submitted a settlement for judicial approval as required by the Second Circuit in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). *See* Dkt. 12, Ex 1, at 1 (the "Settlement"). In support of the Settlement, the parties submitted a joint letter advocating for judicial approval. *See* Dkt. 12 (the "Letter" or "Ltr.") For the reasons stated below, the Court denies the parties' request for approval of the settlement without prejudice to renew in accordance with this opinion.

## BACKGROUND

On June 3, 2015, Plaintiff initiated this action against Defendants Sengupta Food Services, LLC, which does business as Soho Park Restaurant, and its owners, Ashim Sengupta and Shawn Sengupta alleging violations of the FLSA and NYLL. The Complaint alleges that Derfendants failed to pay Plaintiff overtime wages during the time of his employment as a "kitchen helper and food preparer." Compl. ¶¶ 15, 19.

In early September, the parties notified the Court that they had reached a settlement. On September 22, 2015, the parties filed their Settlement agreement. *See* Ltr. at 1. The Settlement requires Defendants to pay Plaintiff $55,000—constituting $16,000 in back pay, $19,970 in liquidated damages, and $22,000 for attorney's fees, costs, and expenses. Settlement at 1. The attorney's fees amount to forty percent of the total settlement. The Settlement contains a "General Release" provision as well as a provision on "Non-Disparagement." Settlement at 4–5. The parties, though, "have agreed to strike the confidentiality provisions of the agreement," Ltr. at 2 n.2, and they thus placed a line through the "Confidentiality" and "Breach of Confidentiality" sections, Settlement at 5–8.

The Letter details settlement discussions and advocates for judicial approval. It describes how the parties' calculated the value of Plaintiff's claims—approximately $40,000 by Plaintiffs and $35,000 by Defendants—as well as the litigation risk of allowing the case to move forward. Ltr. at 2–3. The Letter states that the Settlement "was reached as a result of extensive, arm's length negotiations between counsel." Ltr. at 3. Finally, it advocates for the fee award, noting that the parties believe it to be reasonable given Mr. Cooper's experience. The parties acknowledge, however, that the award is 1.4 times what it would have been had they billed plaintiff hourly, and includes over thirty eight hours of attorney time at $400 per hour and 6.8 hours of time for Mr. Cooper's assistant, Ms. Pena, at $100 per hour.

## DISCUSSION

Employers who violate the FLSA's overtime requirements are "liable to the . . . employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Parties cannot privately settle FLSA claims

2

with prejudice absent the approval of the district court or the Department of Labor. *See Cheeks*, 796 F.3d at 200.

To gain approval, the parties must satisfy the Court that their agreement is "fair and reasonable." *Velasquez v. SAFI–G, Inc.*, No. 15-CV-3068 (WHP), 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015). "In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Soc.*, No. 10-CV-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. Jul. 23, 2010)).

Because the Settlement's general release provision is overbroad and the non-disparagement provision is overly restrictive, the Settlement must be rejected without prejudice to renew.

**I.  General Release**

As part of the Settlement, Plaintiff is required to waive essentially all claims that may have arisen out of his employment with Defendants. Specifically, the Settlement requires Plaintiff to:

> irrevocably and unconditionally waive . . . claims, actions causes of action or liabilities arising under any other federal, state municipal or local statute, law ordinance or regulation; and/or . . . any other claim whatsoever including, but not limited to claims based upon breach of contract, tort, equity, implied contract, wrongful termination, defamation, intentional infliction of emotional distress, sexual harassment, tortious interference with contract, assault, battery, violation of public policy, negligence and/or any other common law, statutory or other claim whatsoever arising out of or

3

>relating to plaintiffs' employment with and/or separation from employment with defendants.

Settlement at 4–5. These provisions are "too sweeping to be 'fair and reasonable' and so must be rejected." *Flood v. Carlson Restaurants Inc.*, No. 14-CV-2740 (AT) (GWG), 2015 WL 4111668, at *2 (S.D.N.Y. Jul. 6, 2015).

Where the provisions of a general release "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues . . . [c]ourts typically reject such broad releases." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015); *accord Garcia v. Jambox, Inc.*, No. 14-CV-3504 (MHD), 2015 WL 2359502, at *4 (S.D.N.Y. Apr. 27, 2015) ("This release is not 'fair and reasonable' because it encompasses far too broad a range of possible claims."); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592 (LAK), 2014 WL 6985633, at *1 (S.D.N.Y. Dec. 11, 2014). "In the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Camacho*, 2014 WL 6985633, at *1; *see also Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("Although inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA.").

This Court "joins those courts that have refused to 'countenance employers using FLSA settlements to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute.'" *Flood*, 2015 WL 4111668, at *2 (quoting *Camacho*, 2014 WL 6985633, at *4). If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action.

4

## II. Non-Disparagement

The Settlement also includes a non-disparagement provision that bars both Plaintiff and Defendants from making disparaging comments about each other. Specifically, the provision states that "Plaintiff agrees not to criticize, denigrate, or disparage defendants or any of defendants' officers, managers, or supervisors in any manner whatsoever." *See* Dkt. 24 at 6–7. This clause runs afoul of FLSA's objectives.

Courts must carefully review any confidentiality provisions in FLSA settlements because they are potentially in tension with Congress's broader goal of ensuring widespread compliance with the statute. *See Lopez*, 96 F. Supp. 3d at 177–78. Although not all non-disparagement clauses are *per se* objectionable, if the provision "would bar plaintiffs from making 'any negative statement' about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case. Otherwise, such a provision contravenes the remedial purposes of the statute." *Id.* at 180 n.65.

The instant non-disparagement provision contains no such carve-out. Without this exception, Defendants could argue that Plaintiff would violate the agreement by informing other employees—who may not be aware of their rights under FLSA—of the company's failure to pay the wages required by law. "Barring the plaintiff from speaking about the settlement would . . . thwart Congress's intent to ensure widespread compliance with the statute . . . by silencing the employee who has vindicated a disputed FLSA right." *Camacho*, 2015 WL 129723, at *2 (internal citations and alteration omitted). This Court will not approve a settlement containing the non-disparagement provision as written.

## III. Attorney's Fees

Finally, although the Court rejects the Settlement on other grounds and need not reach the request for attorney's fees, it is worth mentioning certain excesses in the request in order to provide guidance to the parties in anticipation of refiling. When evaluating a FLSA settlement that includes the payment of attorney's fees, the court "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In doing so, "[t]he Court must . . . separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined." *Beckert v. Rubinov*, No. 15-CV-1951 (PAE), 2015 WL 6503832, at *2 (S.D.N.Y. Oct. 27, 2015) (quoting *Lliguichuzcha v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013)).

The settlement agreement provides for $21,444 in attorney's fees, or thirty-nine percent of the total settlement. *See* Settlement at 3.[1] This amount equals "approximately 1.4 times what [counsel] would have been entitled to had they billed their client hourly." Ltr. at 3. "Except in extraordinary cases, courts in this District have declined to award fees representing more than one-third of the total settlement amount." *Run Guo Zhang*, 2015 WL 5122530, at *4; *accord Thornhill v. CVS Pharmacy, Inc.*, No. 13-CV-5507 (JMF), 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases that reduce attorney's fees greater than 33% of the settlement).

Such an award is excessive here for three reasons. First, this case was fairly straightforward—indeed, it never proceeded to discovery—and so it would be difficult for counsel to "justif[y] an award at the upper end of the range of common awards—namely, 33% of the total settlement," let alone thirty-nine percent. *Run Guo Zhang*, 2015 WL 5122530, at *4. Second,

---

[1] The Letter states that $22,000 of the $55,000 settlement reimburses attorney's fees, costs, and expenses. The only costs and expenses identified, however, are the $400 filing fee and $156 for service of the summons and complaint.

here, a reduction in attorney's fees directly impacts Plaintiff's individual recovery as the Letter notes that Plaintiff "instructed our office to resolve the case when a settlement offer of $55,000 was made." Ltr at 2; *see also Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *2 (S.D.N.Y. Oct. 7, 2015) ("'[T]he Court must carefully scrutinize the settlement . . . to ensure that 'the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients.'" (alteration in original) (citation omitted)).

Lastly, courts have found counsel's proposed rates of $400 for Mr. Cooper and $100 for Ms. Pena too high in light of the work performed. *See Hui Luo v. L & S Acupuncture, P.C.*, No. 14-CV-1003 (BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015) (refusing to allow a rate over $300 per hour for an attorney who "has been in practice since 1989 but," like Mr. Cooper, "has only been litigating wage cases since 2009"); *Cuevas v. Ruby Enterprises of New York Inc.*, No. 10-CV-5257 (JS) (WDW), 2013 WL 3057715, at *2 (E.D.N.Y. June 17, 2013) ("[C]ourts in this Circuit have generally found $75 an hour to be reasonable with respect to paralegal work."). Indeed, several courts have reduced these precise rates specifically with respect to Mr. Cooper and his partner Mr. Cilenti. *See Cuevas*, 2013 WL 3057715, at *2 ("While Mr. Cilenti has considerable experience as a litigator, his background is not as extensive as those highly experienced and impeccably credentialed partners who have been awarded rates on the higher end of the attorneys' fees spectrum." (internal quotations and citations omitted)); *Rosas v. Subsational*, No. 11-CV-2811 (FB) (MDG), 2012 WL 4891595, at *10 (E.D.N.Y. Sept. 11, 2012) (same).

## CONCLUSION

As the proposed Settlement contains an overbroad general release provision and an overly restrictive non-disparagement provision, this Court will not approve it. The parties may file a revised agreement consistent with this opinion by December 31, 2015.

SO ORDERED.

Dated:   December 15, 2015
         New York, New York

Ronnie Abrams
United States District Judge